GRAYBURG OIL COMPANY V. BASCOM GILES, COMMISSIONER
OF THE GENERAL LAND OFFICE.

No. A-450. Decided March 28, 1945.
Rehearing overruled April 25, 1945.
(186 S. W., 2d Series, 680.)

*Birkhead, Beckmann, Stanard & Vance* and *W. Glendon
Roberts*, all of San Antonio, for realtor.

Under Chapter 140, Acts of 1925, providing that the pro-
visions relating to the payments of rentals in oil and gas leases
shall not apply, under the condition therein stated, to leases of
"bays, marshes, reefs, salt-water lakes *or other submerged
lands*" includes submerged river beds, so that no obligation to
pay rentals on the river bed lease here involved existed after
the year 1928 when more than five wells had been drilled and
upon which an expenditure of more than $100,000.00 had been
made by relator's predecessors in title pursuant to statute. Mis-
souri, K. & T. Ry. Co. v. Mahaffey, 105 Texas 394, 150 S. W.
881; Lyles v. Oheim, 138 Texas, 333, 159 S. W. (2d) 102; Crary
v. Port Arthur Channel and Dock Co., 92 Texas 175, 47 S. W. 967.

*Grover Sellers,* Attorney General, *Jack Rowland* and *Geo. W. Barcus,* Assistants·Attorney General for respondent.

The only land exempt from the payment of this rental under the act is question is "bays, marshes, reefs, sale-water lakes, or other submerged land containing as much as 500 acres upon which as many as five wells have been drilled and $100,000.00 has been expended." Miller v. El Paso County, 136 Texas 370, 150 S. W. (2d) 1000; State v. Bradford, 121 Texas 515, 50 S. W. (2d) 1069; City ·of Galveston v. Mann, 135 Texas·319, 143 S. W. (2d) 1029.

MR. JUSTICE SHARP delivered the opinion of the Court.

Grayburg Oil Company seeks by mandamus proceedings to compel Basccm Giles, Commissioner of the General Land Office of Texas, to issue to it a formal renewal of an oil and gas lease, No. 11610, issued by the Commissioner of the General Land Office of Texas on July 1, 1927, on 280 acres of the Pecos River bed owned by the State in Pecos and Crockett counties, Texas, and that said renewal be effective as of July 1, 1937.

On July 1, 1927, the Commissioner of the General Land Office executed and delivered a ten-year lease, with the right of renewal thereof, to J. B. O'Reilly and others on 280 acres of land of the Pecos River bed. This lease was transferred to relator, who now owns the right thereunder. In December, 1937, relator requested a renewal of said lease, which respondent has refused to grant because relator has failed and refused to pay the $2.00 per acre rental provided for in the lease.

The precise question to be determined is whether relator is entitled to a ten-year renewal of the lease without paying the $2.00 per acre rental.· The lease dated July 1, 1927, was issued pursuant to the provisions of Chapter 83, Acts of 1917, 35th Legislature, Regular Session, page 158, and amendments thereto, Article 5338 et seq. Vernon's Annotated Civil Statutes. The lease contains the following provision:

"In addition to the two dollars per acre already paid on each acre included herein, the owner of the rights herein conveyed shall pay a like sum annually hereafter in advance on the area included herein, which shall be paid on or before the expiration of each year during the life of this contract, and in addition thereto, the owner of the rights herein conveyed shall pay to the State of Texas at the General Land Office of Texas, at Austin, Texas, a sum of money equal to a royalty of one-eighth

of the value of the gross production of petroleum and shall pay a sum of money equal to ten per cent of the value of all gas sold. * * *."

Relator contends that under the provisions of Chapter 140, Acts of 1925, 39th Legislature, Regular 'Session, page 348, Article 5344 Vernon's Annotated Civil Statutes, properly construed, no rentals have been payable under lease since the year 1928, when its predecessors in title had drilled more than five wells in the river bed covered by the lease and expended more than $100,000.00 thereon pursuant to the statute. Respondent contends (1) that regardless of any other question, since relator made a contract in 1927 after said act was passed, under the terms of which it agreed to pay the $2.00 per acre rental, said contract is binding, and (2) that the bed of the Pecos River is not submerged land within the meaning of the 1925 amendment to the 1917 act. Relator and respondent have agreed to the facts involved in this case, and both agree that the only question to be determined is whether relator is entitled to a ten-year renewal of the lease without paying the $2.00 per acre rental.

We will briefly analyze the statutes relating to the question before us in order to arrive at the intention of the Legislature in the enactment of such statutes. The material parts of the 1917 act, being Chapter 83, Acts of the 35th Legislature, page 158, reads as follows:

"Section 1. All public school, University and Asylum land and other public lands, fresh water lakes, river beds and channels, islands, bays, marshes, reefs and salt water lakes belonging to the State and all lands which may hereafter be so owned and all of said lands which have heretofore been sold or disposed of by the State or by its authority with a reservation of minerals or mineral rights therein as well as all lands which may hereafter be sold with the reservation of minerals or mineral rights therein, and lands purchased with a relinquishment of the minerals therein, shall be included within the provisions of this Act and shall be open to the prospecting for and the development of the minerals and substances known as * * * petroleum, natural gas * * * upon the terms and conditions provided in this Act."

Sections 2, 3, 4, 5, and 6 are not pertinent to the question here involved. Section 7 prior to its amendment by Chapter 140 reads in part as follows:

"Section 7. If at any time within the life of a permit one should develop petroleum or natural gas in commercial quantities the owner or manager shall file in the General Land Office a statement of such development within thirty days thereafter, and thereon the owner of the permit shall have the right to lease the area included in the permit upon the following conditions:

"1. An application and a first payment of two dollars per acre for a lease of the area included in the permit shall be made to the Commissioner of the General Land Office within thirty days after the discovery of petroleum or natural gas in commercial quantities.

"2. Upon the payment of two dollars per acre for each acre in the permit a lease shall be issued for a term of ten years or less, as may be desired by the applicant, and with the option of a renewal or renewals for an equal or shorter period, and annually after the expiration of the first year after the date of the lease the sum of two dollars per acre shall be paid during the life of the lease, and in addition thereto the owner of the lease shall pay a sum of money equal to a royalty of one-eighth of the value of the gross production of petroleum. The owner of a gas well shall pay a royalty of one-tenth of the value of the meter output of all gas disposed of off the premises."

The only amendment that was made by the Act of 1925 to the Act of 1917 that is material here was to Sub-section 2 of the above Section 7, by adding to said Sub-section 2 the following provision:

"* * *; provided, however that the provisions hereof as to the payment of two ($2.00) dollars per acre during the lease period and the life of said lease shall not apply to leases of *bays, marshes, reefs, salt water lakes or other submerged lands* containing as much as one hundred (100) acres but not in excess of five hundred (500) acres upon which as many as five wells have been drilled, and upon which an expenditure of as much as one hundred thousand ($100,000.00) dollars has been made. The drilling of said wells and the expenditure of said amount to be established to the satisfaction of the commissioner of the land office." (Emphasis ours.)

Relator contends that the Act of 1925, providing that the provisions thereof as to payment of rentals shall not apply, under the conditions therein stated, to leases of "bays, marshes, reefs, salt water lakes or other submerged lands," properly construed, includes submerged river beds, and that under the facts

of this case it is released from payment of the rental of $2.00 per acre.

Did the Legislature by using the words "other submerged lands" in the amendment of 1925 intend to include river beds? The decision of this case turns upon what was the intention of the Legislature in the use of these words. The original Act of 1917 placed on the market subject to lease, as provided in Section 1 thereof, the following:

"All public school, University and Asylum land and other public lands, fresh water lakes, river beds and channels, islands, bays, marshes, reefs and salt-water lakes belonging to the State, and all lands which may hereafter be so owned."

The amendment of 1925 to Sub-section 2 of Section 7 of the 1917 Act, as pointed out above, merely provides that the provisions relating to the payment of $2.00 per acre rental during the lease period, 'shall not apply to leases of bays, marshes, reefs, salt water lakes or *other submerged lands* containing as much as one hundred (100) acres but not in excess of five hundred (500) acres upon which as many as five wells have been drilled, and upon which an expenditure of as much as one hundred thousand ($100,000.00) dollars has been made."

■ In many instances the emergency clause attached to a bill may be considered to determine the intent of the Legislature as expressed in the act. The emergency clause to the 1925 Act reads as follows:

"Sec. 2. The fact that leases exist upon some of the bays, marshes, reefs, salt-water lakes and other submerged lands of the area herein indicated upon which many wells have been drilled and large amounts of money expended, and the fact that another periodical payment of two ($2.00) dollars per acre will soon be due and the fact that the payment of said amount is unfair and unjust to the owners of these leases, * * *."

■ It has long been the public policy of this State that river beds and channels of navigable streams should be held by the State in trust for the whole people. It has been repeatedly held that if a sale or lease thereof is authorized, it would have to be expressed in plain and explicit language. Dolan v. Walker, 121 Texas 361, 49 S. W. (2) 695; Landry v. Robison, 110 Texas 295, 219 S. W. 820, and cases cited therein. Furthermore, in construing similar statutes relating to the sale and lease of river beds and channels, it has been held such statutes should be strictly construed; and this Court in the case of Dolan v. Walker,

supra, which involved the construction of House Bill No. 358 and Senate Bill No. 20, used the following language:

"The provisions of this act [H. B. 358] should be construed in the light of the well-established rule that legislative grants of property, rights, or privileges must be construed strictly in favor of the state on grounds of public policy, and whatever is not unequivocally granted in clear and explicit terms is withheld. Any ambiguity or obscurity in the terms of the statute must operate in favor of the state. Empire Gas & Fuel Co. v. State, 121 Texas 138, 47 S. W. (2d) 265, 36 Cyc. p. 1177; Lewis' Sutherland Statutory Construction, Vol. 2, sec. 548; Central Transportation Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; 18 R. C. L. p. 1220; Coosaw Min. Co. v. South Carolina, 144 U. S. 550, 12 S. Ct. 689, 36 L. Ed. 537."

See also Magnolia Petroleum Co. v. Walker, 125 Texas 430, 441, 83 S. W. (2d) 929.

In the amendment of 1925 no reference is made to river beds and channels. From the language used in both the 1917 Act and in the 1925 Act, construed in the light of the public policy of this State and of the history of such legislation, such acts were passed with reference to bays, marshes, reefs, salt water lakes, and other similar submerged lands, and it was not intended to refer to river beds far removed from the salt water territory. If the Legislature had intended to include river beds in these acts, it could have expressed such intention in plain language. This was not done, and this Court would not be justified in giving it that construction.

Relator's application for a mandamus is denied.

Opinion delivered March 28, 1945.

Rehearing overruled April 25, 1945.