## STATE v. J. M. HUBER CORPORATION et al.

### No. 9539.

Court of Civil Appeals of Texas. Austin.

March 27, 1946.

Rehearing Denied April 10, 1946.

Grover Sellers, Atty. Gen., and Geo. W. Barcus, Wm. J. Fanning, and Jack W. Rowland, Asst. Attys. Gen., for appellant.

Critz, Kuykendall, Bauknight, Mann & Stevenson, of Austin, and John W. Beveridge, of Borger, for appellee J. M. Huber Corporation.

G. R. Pate, John A. Braly, and Burney Braly, all of Fort Worth, for appellee Continental Oil Co.

BAUGH, Justice.

The State sued Continental Oil Company and J. M. Huber Corporation to recover, as delinquent, $58,240 rentals alleged to be due on a ten-year river bed oil and gas lease issued by the Commissioner of the General Land Office to the Marland Oil Company, dated February 7, 1927, on 2,080 acres of the Canadian River bed in Hutchinson County. This lease was assigned by the Marland on

October 17, 1929, to the Continental Oil Company; subsequently on August 9, 1935, and January 31, 1936, assigned by the Continental to J. M. Huber Corporation; and renewed, on February 7, 1937, by the J. M. Huber Corporation for another ten-year period. The defendants lodged special exceptions to the State's petition, asserting that under certain statutes therein pleaded, no such rentals were due the State as a matter of law, which exceptions were by the trial court sustained, and the State having declined to amend, the suit was dismissed; hence this appeal.

The facts alleged were that pursuant to Chap. 83, Acts of 1917, a permit was issued to one Ray Wheatley on August 24, 1925, to prospect for oil and gas on the land in question. Wheatley assigned the permit to the Marland Oil Company, which developed the land, made proof thereof as required by law, and secured the oil and gas lease thereon from the Land Commissioner on February 7, 1927. This lease provided that it should run "for a term of ten years, with the right of renewal, or renewals," and further that: "In addition to the two dollars per acre already paid on each acre included herein, the owner of the rights herein conveyed shall pay a like sum annually hereafter in advance on the area included herein, which shall be paid on or before the expiration of each year during the life, of this contract * * *."

The foregoing language was in keeping with, and obviously based upon, the provisions and requirements of Chap. 83, § 7, Sub. 2, Acts of 1917, p. 160, which provided: "Upon the payment of two dollars per acre for each acre in the permit a lease shall be issued for a term of ten years or less, as may be desired by the applicant, and with the option of a renewal or renewals for an equal or shorter period, and annually after the expiration of the first year after the date of the lease the sum of two dollars per acre shall be paid during the life of the lease, * * *."

This section of the 1917 Act was amended in 1925 (Acts 1925, 39th Leg., Ch. 140, § 1, Vernon's Ann. Civ.St. Art. 5344, "so as to read as follows:" "Upon the payment of $2.00 (two dollars) per acre for each acre in the permit a lease shall be issued for a term of ten (10) years, or less, as may be desired by the applicant, and with the option of a renewal or renewals for an equal or shorter

period, and immediately after the experation (expiration) of the first year after the date of the lease, the sum of (two) ($2.-00) dollars per acre shall be paid during the life of the lease, * * *."

It is the contention of the State that the 1925 amendment did not relieve the lessee and its assignees from the payment of the $2 per acre annual rental; and the contention of appellees that the provisions of the law are read into and made a part of the lease; and that the 1925 amendment, properly construed, required the lessee to pay only the down payment of $2 per acre and one rental payment of $2 at the beginning of the second year of such lease; that such payments had been made by the lessee; that no further rental payments were required for a renewal of such lease in 1937; and consequently that nothing is due the State as further rentals.

The contention of the State is predicated upon its construction of the statutes involved; and its reliance upon the case of Grayburg Oil Co. v. Giles, Tex.Sup., 186 S.W.2d 680, as controlling here under the doctrine of stare decisis. The Attorney General in his brief admits that "The lease in question was issued on February 7, 1927, when Chapter 140 was in force. The payment of rentals on this lease is governed by the provisions of that Act." The lease in question was executed on a printed form, obviously drawn to conform with the 1917 Act, and does not embody the language of the 1925 Act. It is conceded by all parties, however, that the language of the statute in force at the time, authorizing execution of such lease and prescribing its terms, is to be read into and deemed to be a part of the lease.

The 1925 Act, in so far as rentals. were concerned, did not merely amend the 1917 Act (Sec. 7, Sub. 2 thereof) by making an addition thereto, but amended same "so as to hereafter read as follows" and changed the word "annually" as applied to rentals to read "immediately". It is true that the language "during the life of the lease" was retained; and the State insists that this latter clause, either manifests an intention of the Legislature to require such payments each year during the life of such lease; or at least makes its meaning ambiguous and uncertain, which ambiguity and uncertainty should be construed strictly in favor of the State. However, the Legislature in rewriting and re-

enacting this section of the 1917 Act, did change the word "annually" to read "immediately". It must have had some purpose in doing so. The two words have separate and distinct meanings. To sustain the State's contention that the Legislature intended the word "immediately" to mean "annually" would be not merely to restrict or enlarge its meaning to effectuate a clear intent; but would amount to a clear judicial substitution of language of different meaning. If the Legislature had meant that rentals should be paid annually, as the 1917 Act provided, then there would have been no purpose whatever in changing the language clearly and expressly so providing. And if the language "immediately after the experation (expiration) of the first year after the date of the lease" had been intended merely to fix the time of payment of such rental, then to effectuate a continuance of annual rentals, it would be necessary for us to read into the Act "and a like sum each year thereafter during the life of the lease," or language of similar import. This would clearly be adding to the law by judicial construction something which apparently the Legislature had designedly omitted; and something which, had it so intended, could easily have been so stated. This the courts have no authority to do.

■ It is a canon of statutory construction that literal meaning of a statute may be disregarded where the intent of the law is plain, ascertainable from its own provisions, and where, to give the language used a literal meaning, would work an absurdity or manifest injustice. Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037; Sutherland on Stat. Construction, §§ 364, 368; 50 Am.Jur., §§ 240, 241, pp. 233-237; Annotations: 3 A.L.R. 404, 126 A.L.R. 1325. While the 1925 Act did retain and carry forward the language of the 1917 Act "during the life of the lease," it would be a strained construction, we think, to hold that this language evidences a legislative intent that by the word "immediately" the Legislature meant "annually". The very fact that the Legislature in rewriting the statute itself substituted the word "immediately" for the word "annually" indicates a contrary intent. This clause may therefore be regarded as surplusage.

■ Nor do we find any other provision in the 1925 amendment clearly indicating that the Legislature did not intend what it said in changing the word "annually" to read "immediately". The proviso added in that amendment exempting lessees of tracts of from 100 to 500 acres, on which as much as $100,000 had been expended and five wells drilled, from payment of the $2 per acre "during the lease period and the life of said lease," indicates no such intent as applied to river bed leases. The proviso applies only to the named types of leases. That is, of "bays, marshes, reefs, salt-water lakes or other submerged lands." The Supreme Court held in Grayburg Oil Co. v. Giles, Tex.Sup., 186 S.W. 2d 680, that river bed leases did not come within the term "other 'submerged lands.'" Further, the lease here involved consists of 2,080 acres, which would also exclude it from the proviso.

The Attorney General in an opinion directed to the Land Commissioner in 1931, advised him that as to all such leases, under the 1925 amendment, only two payments of $2 per acre each were due,— one at the inception of the lease, and one at the beginning of the second year thereof,—and that where a lease fell within the terms of such proviso the lessee would be relieved of even the second payment. This, we think, was and is a proper construction of the statute.

However the Attorney General subsequently reversed the 1931 opinion, and here relies on the case of Grayburg Oil Co. v. Giles, Tex.Sup., 186 S.W.2d 680, as stare decisis on the question here presented and as conclusive on this appeal. It is true that in the Grayburg case the lease there involved was executed the same year as the one here involved, and contained the same provisions. In that instance, however, the Land Commissioner refused to renew it after expiration of the primary term in 1937, because of failure of the lessee to pay the $2 per acre rental. What rental or rentals were claimed to be owing by the lessee is not disclosed by the opinion of the Supreme Court in the Grayburg case. In 1945 the lessee sought by mandamus in the Supreme Court to compel the Commissioner to execute a renewal lease. The status of that lease between the date of its expiration in 1937, and the time that suit was filed in 1945 is not shown; nor does it appear when the application to the Commissioner for the renewal of that lease was made. It does appear, however, that the sole and only ground presented in the application for the mandamus, was that

the lease there involved came within the terms of the proviso in the 1925 amendment to the 1917 Act. That is, that that lease contained more than 100 and less than 500 acres; that lessee had drilled five wells thereon at an expenditure of more than $100,000; and that river beds, though not expressly designated in the proviso covering "bays, marshes, reefs, salt-water lakes or other submerged lands," constituted "submerged lands" within the meaning of that term. That was the only question presented to and decided by the Supreme Court in that case. This is made clear by the following language of the opinion: "Did the Legislature by using the words 'other submerged lands' in the amendment of 1925 intend to include river beds? The decision of this case turns upon what was the intention of the Legislature in the use of these words." It is clear, therefore, that the precise issue of law here presented was not presented to the court in the Grayburg case at all; and that the precise issue determined by the Supreme Court in that case is not here relied upon by the appellees.

■ The applicability of the doctrine of stare decisis is stated in 14 Am.Jur. § 79, p. 293, thus: "to make an opinion a decision there must have been an application of the judicial mind to the precise question necessary to be determined * * *." And in the footnote to the text it is stated on authority of United States v. Miller, 208 U.S. 32, 28 S.Ct. 199, 52 L.Ed. 376, and other cited cases, that "A decision is not authority upon a question not raised and considered in the case, although it may be involved in the facts." To the same effect is the rule announced in 21 C.J.S., Courts, § 195, p. 334, as follows: "Furthermore, the former holding or decision is binding only to the extent of the *precise question passed upon;* and is confined to the application of a legal principle to the same, or substantially the same, state of facts, and is not binding as to facts *or issues* not adjudicated or involved in the former decision or ruling." (Emphasis ours.)

■ Consequently, under the rules above announced, the decision in the Grayburg case is not stare decisis of the issue here presented; nor does it preclude this court from considering such issue as an original proposition.

We conclude, therefore, that the trial court properly construed the 1925 amend-

ment to the 1917 Act; and that under it the appellees did not owe the State as rentals the amounts sued for. This conclusion renders unnecessary a discussion of the other issues urged by the State that the trial court erroneously construed the Acts of 1931, Reg.Sess. 42d Leg., Chap. 271, § 10, as amended in September 1931 by Chap. 40 of the Second Called Sess. of the same Legislature, Vernon's Ann. Civ.St. art. 5421c, §§ 10 and 8—A, as relieving appellees from payment of any further rentals after 1931. This obviously, for the reason that under the 1925 amendment they did not then nor thereafter owe such rentals.

It follows, therefore, that the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.