**Alice Margaret KRUG, Appellant,**

**v.**

**The LINCOLN NATIONAL LIFE INSURANCE COMPANY, Appellee.**

**No. 16524.**

United States Court of Appeals
Fifth Circuit.

June 10, 1957.

---

Malcolm McDermott, McAllen, Tex., William E. York, James C. Abbott, McAllen, Tex., for appellant.

Harry L. Hall, Mission, Tex., Strickland, Wilkins, Hall & Mills, E. G. Hall, Mission, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

This cause began with the usual and ordinary allegations in a usual and ordinary suit upon a usual and ordinary life insurance policy containing the usual ordinary suicide clause.[1] As thus begun, it presented the usual and ordinary issue of fact where the clause is, as here, relied on as a defense.[2]

On June 18, the date the cause was set for trial, plaintiff, moving for judgment on the ground that the suicide clause was void since it never had been approved by the Texas Board of Insurance Commissioners and such approval was required by Art. 3.45, subd. 3 of the Texas Insurance Code, V.A.T.S., injected into the cause a new and paramount issue which, dominating the proceedings below, has become the sole issue on this appeal.

A certificate of the chairman of the board attached to the motion certified: that the defendant's specimen policy form 33-10-52 was on file in the office; and that there was no reference to the form or any part of it in the Minutes or other records of board action.

Defendant's objection to the late filing of the motion, on the ground that it had been stipulated on pretrial that the only issue in the case was suicide, was overruled, and the motion was carried along with the case with the right to counsel to offer testimony on the motion if necessary.

The issue of whether Krug had committed suicide was then tried and submitted to a jury and answered in the affirmative by it, and thereafter plaintiff moved for judgment notwithstanding the verdict on the grounds: (1) of the insufficiency of evidence to overcome the presumption against suicide; and (2)

---

1. "6. Suicide. If the insured shall commit suicide while sane or insane within two years from the date of issue hereof, the liability of the company under this policy shall be limited to the premiums actually paid hereon less any indebtedness."

2. Indeed it was stipulated by the parties and entered into the pretrial docket on April 13, 1956, that the "only disputed issue is, Did deceased commit suicide?"

that the suicide clause to be valid had to be, and was not, approved by the board, and it was, therefore, void.

The district judge holding that the evidence fully supported, if indeed it did not require, the verdict and that the clause was valid, denied the motion.

Concluding that if the statute invoked by plaintiff requires approval of the suicide clause by the board, approval must be given by the board as in the case of the Railroad Commission and other state agencies,[3] and that on the evidence the board, as such, did not consider or approve the form of a policy containing the suicide clause but simply permitted it to be filed pursuant to the practice of the board after it had been examined by a clerk, the district judge agreed with plaintiff's contention that the evidence did not show board approval. He disagreed, however, with her primary contention that the statute requires board approval and that failure to secure it rendered the clause void, and in an opinion setting out the statute and correctly, we think, giving his reasons[4]

---

3. 34 T.J. 457; Webster v. Texas & Pacific, 140 Tex. 131, 166 S.W.2d 75; Houston & North Texas Motor Freight Lines v. Johnson, 140 Tex. 166, 166 S.W.2d 78; Sanders v. Midstates Oil Corp., Tex.Civ. App., 166 S.W.2d 716.

4. As pertinent here, these are:
"Art 3.45, subd. 3 of the Insurance Code, V.A.T.S. reads in part as follows:
" 'Art. 3.45—Policies Shall Not Contain Certain Provisions
'No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company incorporated under the laws of this State, if it contains any of the following provisions:

    \*      \*      \*      \*      \*

" '3. A provision for any mode of settlement at maturity of less value than the amounts insured on the face of the policy, plus dividend additions if any, less any indebtedness to the company on the policy, and less any premium that may by the terms of the policy be deducted; provided, however that any company may issue a policy promising a benefit less than the full benefit in case of the death of the insured by his own hand while sane or insane, or by following stated hazardous occupations, *or in the event the death of the insured should result from aviation activities under the conditions specified in the policy, to be approved by the Board of Insurance Commissioners, as provided in this chapter.* This provision shall not apply to purely accident and health policies. No foregoing provision relating to the policy forms shall apply to policies issued in lieu of, or in exchange for, any other policies issued before July 10, 1909.' (Emphasis supplied)

"At first reading it would appear that suicide clauses must be approved by the Board. But the language 'to be approved by the Board of Insurance Commissioners' crept into the statute in an amendment in 1941 [H.B. 264, General and Special Laws, 1941, 47th Leg. p. 519, effective 5-26-41] of then Art. 4733 which, since its enactment in 1909, had authorized in identical language the issuance of 'a policy promising a benefit less than the full benefit in case of the death of the insured by his own hand while sane or insane, or by following stated hazardous occupations', without any requirement for Board approval. By the enactment of 1941, the Legislature re-enacted old Art. 4733 in its entirety 'so as to read as follows', by adding after 'hazardous occupation' only the clause emphasized above—'or in the event the death of the insured should result from *aviation activities* under the conditions specified in the policy, to be approved by the Board of Insurance Commissioners as provided in Chapter 3, Title 78 of the Revised Civil Statutes of Texas of 1925'. The bill carried an emergency clause reciting that 'the existing law does not permit the issuance of policies providing for the payment of an amount less than the face of the policies, plus dividend additions, in the event the death of the insured should result from *aviation activities*, and on that account many persons engaged in *aviation activities* are unable to secure insurance in Texas, creates an emergency . . .' etc. Thus it is manifest that by the amendment the legislature intended to meet the one situation—*aviation activities*—when it added the provision for approval by the Board. Prior to that time under old Art. 4733 policies could include provisions limiting liability to less than the full benefit in case of suicide with no express provision therein for board approval. [Note: "Suicide could not, and cannot, be interposed as a defense after expiration of the time fixed by the incontestable clause, 24 Tex.Jur. 1078,

for so doing, he concluded that the clause had been authorized by statute in 1909 and had continued ever since to be valid, and that the petitioner's attack upon it should be rejected. He entered judgment accordingly, and this appeal followed.

Abandoning here her contention that the verdict of the jury that Krug had committed suicide must be set aside, and directing her whole attack upon the suicide clause as unauthorized because it must have had, and did not have, formal board approval, plaintiff's counsel struggles to maintain a position which is in the teeth of every act and fact in the record and in the history of life insurance policies in this state for the last half century, and which, if sustained, would invalidate as to the clause in question the thousands of policies heretofore issued and now issued and outstanding.

S268. Since the Act of 1909, the statute has required a clause making the policy incontestable not later than two years from its date, except for non-payment of its premiums. Old Art. 4733(3), now Art. 3.44, subd. 3, Ins.Code, V.A.T.S."]

"Of course, it can be argued with force, as plaintiff does, that the provision for Board approval in the 1941 amendment relates to suicide as well as aviation activities; but, in construing any statute the first rule is to determine the intent of the legislative body and give effect to that intent if it can be done without violence to the language employed. Here this can be done with ease by holding that the requirement for Board approval relates only to 'aviation activities', whereas the construction plaintiff seeks would do violence to the intention of the legislature and create confusion. While the emergency clause may not be invoked for the purpose of *creating* an ambiguity in a statute or to control its *plain* meaning and purpose, it may be, and often is, considered if it sheds light upon the inquiry and will aid in ascertaining the legislative intent. [Note: "39 Tex.Jur. 228; Grayburg Oil Co. v. Giles, 143 Tex. 497, 186 S.W.2[d] 680; Trawalter v. Schaefer, 142 Tex. 521, 179 S.W.2[d] 765; Anderson v. Penix, 138 Tex. 596, 161 S.W.2[d] 455; Houston Belt & Terminal [R. Co.] v. Clark, 135 Tex. 388, 143 S.W.2[d] 373."]

"It is to be noted that the added provision for approval by the Board in the amendment of 1941 read: '. . . to be approved by the Board of Insurance Commissioners *as provided in Chapter 3, Title 78 of the Revised Civil Statutes of 1925.*' The only provision of that chapter dealing with approval were Art. 4749 (now Art. 3.42 of the Insurance Code [V.A.T.S.]) and Art. 4750 (now Art. 3.43 of the Code). Old Article 4749 at that time required (as Art. 3.42 does now) life insurance companies *to file a copy of its form of policy* within five days after issuance and placing upon the market. Old Art. 4750 provided, (as Art.

3.43 does now), that no insurance company should be permitted to issue or sell any policy of *industrial* life insurance, or any policy of *accident* or *health* insurance until its form had been submitted to the Commissioner (now the Board) and approved. No approval was, or is required on ordinary life insurance policies—only *industrial* life policies. The same legislature that passed the amendment of 1941 relating to *aviation activities* had passed an act earlier in the session defining *industrial life insurance*, [Acts 47th Leg.1941, p. 111; Ch. 89, H.B. 5 effective March 29, 1941, now Art. 352, Ins.Code.] providing more in detail for approval of the form, riders, endorsements, etc., by the Board. It is clear, therefore, that the legislature considered 'aviation activities' similar to industrial life policies, hence the requirement for the same approval by the Board.

"The legislature itself has prescribed what a life insurance policy shall contain [Art. 3.44 Insurance Code.] and what it shall not contain [Art. 3.45 Insurance Code.]. When the required provisions are omitted, the law writes them in; and if forbidden provisions are inserted the effect of the statute is to put them out. [American] Insurance Union v. Lowry, [5 Cir.,] 62 F.2[d] 209, 213]. Any provision contrary to the statute is void even if the Board has approved it. [First Texas State Ins. Co. v. Smalley, 111 Tex. 68, 228 S.W. 550; American National Ins. Co. v. Ingle, Tex.Civ.App., 129 S.W.2[d] 426, 429]."

\* \* \* \* \*

"The legislature long ago authorized life policies to limit liability in the event of suicide. It has never indicated that such a clause must be approved by the Board in order to become effective. There would seem to be little occasion for the Board to approve such a clause in view of the uniform decisions of the Texas courts upholding limitation of liability in the event of death by suicide within a specified period."

Apparently undaunted by the magnitude of her task and vigorously insisting that a proper construction of the statute under the principles of statutory construction requires a rejection of the district judge's view that the approval it refers to is limited to the then added provision for death of the insured resulting from aviation activities, plaintiff, invoking all the aids to stautory construction which she finds helpful and citing authorities which she claims support her view, makes a valiant effort to carry her heavy burden.

On its part, appellee, while agreeing with the view of the district judge that the statutes do not require approval by the board of suicide clauses, that they are made lawful by the statute and stand upon statutory authorization, insists further that if wrong in this and the invoked provision of the act does require board approval, such approval is not a formal and quasi-judicial, but an administrative, one. So insisting and pointing to the undisputed facts of record, that over the years the form in general has been approved by the Insurance Department, and that the thousands of policies containing the clause have been accepted for filing and filed with the department, it urges upon us that since it is uncontradicted that copies of this policy and all others containing the same provision have been filed with the board and endorsed as acceptable to it, if any requirement of approval exists, it has been complied with.

Pointing out that it is inherent in all of the Texas decisions on the subject that the public policy of the State as declared by the Legislature, authorizes the suicide clause and that the only concern of the Legislature was to insure that the limitations upon full liability would be so clearly, concisely, and separately stated in the policy as not to mislead the insured, appellee urges upon us that the clause in question meets all such tests. In substance it is in almost the identical statutory language, and the policy clearly meets the test as to form provided by the Life Policy Form Manual adopted and issued as the official act of the Board of Insurance Commissioners on November 16, 1944. While, therefore, strongly urging that the district judge was right in holding that Board approval of the clause, in the sense in which he used the phrase, was not required, appellee pointing out that the Legislature has declared the public policy in Texas with reference to the suicide clause by specifically authorizing the insertion of such a clause in the policy, and that the Board of Insurance Commissioners cannot lawfully either add to or subtract from the substance of the authority so granted, but can only administratively approve or disapprove a particular form, vigorously asserts its contention that the only function which the Board has with reference to such a clause is an administrative one, and it has fully performed that function in repect to it.

Calling to our attention: that approximately 10,000 life policy forms alone are submitted to the State Board of Insurance Commissioners annually; it urges upon us that if the State Board were required as a board to give a quasi-judicial approval of each of said policy forms, it would be impossible for it to do so, while, if as the Board has over the years construed its function in respect to policy forms including the suicide clause, it is an administrative and ministerial one, the performance of which can be delegated, the consideration and approval of proposed forms would be, and is entirely feasible. So urging, it insists that by the adoption by formal action incorporated in the official minutes of the Board of Commissioners on November 16, 1944, of the Life Policy Form Manual, containing a permitted suicide clause and the reception and approval of particular policies by the Board acting through delegates who were authorized to place the Department's filing stamp on duplicates of policy forms submitted by the various companies, the Board properly conceived and properly discharged its function. Pointing to the undisputed facts of record, that policy form 33–10–52 here involved was mailed by appellee to George Butler,

Chairman of the Board in Austin with its letter of 10–29–52, with the request that it be approved; that such letter was received by Mr. Butler; that appearing in its lower right hand corner is the file mark of the Department of Insurance dated 10–30–52; and that it was testified to without conflict that the file mark indicates that the policy form referred to in the letter had been filed and the issuance of policies on such forms authorized in Texas; appellee urges upon us that appellant's attack upon the suicide clause as void is entirely without substance.

 We find ourselves in complete agreement with appellee's contentions: (1) that the district judge was right in his view that no Board approval, in the sense in which the judge used that term, was required; and (2) that if administrative approval was required, it is difficult to see what more could have been done by the defendant to evidence this. The provisions of the policy in question and of the suicide clause embodied therein strictly comply with the statutory provisions of this state, as to what policies must contain, what they shall not contain, and what they may contain. The particular policy form was submitted to the State Board of Insurance Commissioners for approval in the exact manner requested by the Board in order to save time and effort both on its part and on the part of the Board. The approval of the Board as shown by the undisputed testimony of the witness was evidenced by the stamp of the State Board of Insurance Commissioners affixed to the policy form submitted and by the copy of the letter of transmittal dated October 29, 1952, which was returned to the defendant, and the defendant relied thereon as it was clearly entitled to do. Moreland v. Knox, Tex.Civ. App., 268 S.W.2d 744–751.

We agree with the appellee, too, that the problem here involved lies not in the field of adjudication but in that of administration. It is more or less elementary that while an administrative body cannot delegate quasi-judicial functions, it can delegate the performance of administrative and ministerial duties and, where it is impossible for them to be performed in person, it must do so. Cf. Texas State Board of Dental Examiners v. Fieldsmith, Tex.Civ.App., 242 S.W.2d 213, 26 A.L.R.2d 990; Scanlan v. Home Ins. Co., Tex.Civ.App., 79 S.W. 2d 186. In Shreveport Engraving Co. v. United States, 5 Cir., 143 F.2d 222, certiorari denied 323 U.S. 749, 65 S.Ct. 82, 89 L.Ed. 600, this court, in an opinion thoroughly reviewing the applicable law, set out the principles authorizing and governing *the delegation of duties of a public office, the duties of which are so manifold and voluminous that they could not be actually and personally performed by the person holding the office and charged with the performance of its duties.* Cf. Savoretti v. Small, 5 Cir., 244 F.2d 292.

For the reasons given by the district judge in support of his judgment and the further reasons set out hereinabove, the judgment was right, and it is Affirmed.