**Ellizabeth G. McDONALD, Individually and on behalf of all persons similarly situated, Plaintiff,**

**v.**

**GENERAL MILLS, INC., et al., Defendants.**

**Civ. No. S–2553.**

United States District Court, E. D. California.

Jan. 21, 1974.

Motion to Reconsider Dec. 5, 1974.

---

1. *Cf.* Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921, 925 (1960).

Blackmon, Isenberg, Moulds & Blicker, John F. Moulds, III, Sacramento, Cal., for plaintiff.

Robert S. Daggett, Brobeck, Phleger & Harrison, San Francisco, Cal., for General Mills Inc., Union Oil.

Oliver F. Green, Carl W. Robertson, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for S. S. Kresge Co.

Nathan R. Berke, Severson, Werson, Berke & Melchior, San Francisco, Cal., for Connecticut Gen. Life Ins. Co.

William L. Hooth, Burroughs Corp., Detroit, Mich., for Burroughs Corp.

Jeffrey S. Goldman, Kalvin M. Grove, Lederer, Fox & Grove, Chicago, Ill., for General Adjustment Bureau, Inc., St. Paul Fire & Marine Ins. Co., Liberty Mut. Ins. Co.

J. Keith McKeag, Downey, Brand, Seymour & Rohwer, Sacramento, Cal., for International Harvester Co., Goodyear Tire & Rubber Co., General Motors Acceptance Corp.

V. Barlow Goff, McDonough, Holland, Schwartz, Allen & Wahrhaftig, Sacramento, Cal., for A. Teichert & Son, Inc.

Forrest A. Plant, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for Chicago Bridge & Iron Co., Grove Valve & Regulator Co., Libby, McNeill and Libby, New York Life Ins. Co., John Hancock Mut. Life Ins. Co., Connecticut Mut. Life Ins. Co.

Bruce D. Starkey, Gen. Atty., The Hartford Ins. Group, Hartford, Conn., for Hartford Life Ins. Co. (The Hartford Ins. Group) note: not served as correct entity.

Don T. Hibner, Jr., Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for J. C. Penney Co., Inc.

Robert O. Fort, Schei, Fort, Taylor & Pendergast, Sacramento, Cal., for Mut. Life Ins. Co., Mut. Trust Life Ins. Co.

C. Rex Boyd, San Mateo, Cal., James A. Pezzaglia, Martinez, Cal., and George W. Terry, Jr., Atlanta, Ga., for Phillips Petroleum Co.

John M. Schobel, Ralston Purina Co., St. Louis, Mo., for Ralston Purina Co.

Paul A. Dezurick, Graham & James, San Francisco, Cal., for Sea-Land Service, Inc.

David B. Johnson, Rust, Armenis & Matheny, Sacramento, Cal., for Sierra Pacific Power Co.

Pillsbury, Madison & Sutro, Charles F. Prael, Charles E. Voltz, David A. Rotman, San Francisco, Cal., for Western Electric, Prudential Ins. Co.

Russell, Jarvis, Estabrook & Dashiell, Robert W. Jarvis, Sacramento, Cal., for The Travelers Ins. Co.

McDermott, Will & Emery, Harry Sangerman, Chicago, Ill., and Littler, Mendelson & Fastiff, Wesley J. Fastiff, San Francisco, Cal., for Jewel Home Shopping.

Kronick, Moskovitz, Tiedemann & Girard, Edward J. Tiedemann, Sacramento, Cal., for Boise Cascade.

Wright, Nolan & Green, Vincent S. Wright, David B. Green, San Francisco, Cal., for Reliance Ins.

Johnson, Greve & Clifford, Claire H. Greve, Sacramento, Cal., for Minnesota National Life.

Bronson, Bronson & McKinnon, Edwin L. Currey, Jr., San Francisco, Cal., for Chubb & Son, Inc.

Equal Employment Opportunity Commission, Richard S. Cohen, Washington, D. C., amicus curiae.

## MEMORANDUM AND ORDER

MacBRIDE, Chief Judge.

Plaintiff brings this class action claiming unlawful sex discrimination in the employment practices of 31 corporate defendants in violation of Title VII of the Civil Rights Act of 1964, 42 U.S. C.A. § 2000e et seq., and seeking injunctive relief, compensatory damages, costs, and attorney's fees.

The factual setting is not complex. The Sacramento State College Graduate Placement Center sent employer recruitment visit forms to firms which had shown an interest in employment interviews on campus. The visit forms apparently contained boxes which could be checked if a firm preferred to interview either men or women graduates. Each of the defendants checked the box which indicated a preference for male graduates. Plaintiff, a student at Sacramento State, was scheduled to graduate in June, 1970. She and the class she represents allegedly sought to use the services of the Sacramento State College Graduate Placement Center during the spring of 1970, but were purportedly "deterred from making application for employment

and seeking an interview" with representatives of the defendants. In addition, two of the defendants allegedly circulated printed recruitment brochures on campus which referred exclusively to employment opportunities for men. Plaintiff claims that those employment practices are sexually discriminatory and are therefore violative of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq.

Plaintiff initially filed charges with the Equal Employment Opportunity Commission (EEOC) on May 15, 1970. The instant action was filed on August 23, 1972, pursuant to 42 U.S.C.A. § 2000e–5(f),[1] after right to sue notices were issued to plaintiff on August 8, 1972.

A number of motions have been filed in this action by various defendants. In addition, several defendants have joined in each and every motion on file. As the motions on which my decision is based apply equally to all defendants, I shall refer to the defendants collectively rather than singling out the defendant or defendants who actually authored the particular motion under discussion.

█ At the outset, the Court is constrained to meet the challenges to its subject matter jurisdiction. Defendants argue first of all that subject matter jurisdiction is absent in this action for the reason that plaintiff's charges were never brought before the California Fair Employment Practice Commission (FEPC). Section 706(b) of the Civil Rights Act, 42 U.S.C.A. § 2000e–5(c) requires an aggrieved party, before filing a charge with the EEOC, to complain first to whatever state or local agency is authorized "to grant or seek relief from such [unlawful employment] practice or to institute criminal proceedings with respect thereto." Unless that requirement has been complied with, neither the EEOC nor this Court has jurisdiction to entertain the charge. Crosslin v. Mountain States Telephone and Telegraph Co., 422 F.2d 1028 (9th Cir. 1970). California's Fair Employment Practice Commission has authority to investigate and remedy discriminatory employment practices in California. However, on May 15, 1970, when plaintiff filed her charge with the EEOC, the FEPC did not have authority to investigate and remedy acts of discrimination based on *sex*. It was not until November 1970, that sex discrimination became an unfair employment practice under § 1419(f) of the California Labor Code. Calif.Stats.1970, c. 1508, p. 2994, § 3. Therefore the Civil Rights Act of 1964 did not require plaintiff to complain to the FEPC before turning to the EEOC. Donohue v. Shoe Corporation of America, 337 F.Supp. 1357 (C.D.Cal.1972).[2]

Defendants argue that even though *plaintiff* may not have been obligated to file with a state agency in May 1970, nevertheless it was incumbent upon the EEOC itself to refer the case to the FEPC once the latter agency acquired authority over sex discrimination cases in November 1970.

█ The Court recognizes that Congress, in enacting the Civil Rights Act of 1964, intended to give each state which establishes the proper administrative machinery a reasonable opportunity

1. Plaintiff also relied on 42 U.S.C. § 1981 as an additional basis for jurisdiction in her complaint, but she abandoned that ground at the hearing on this matter held on February 26, 1973. Reporter's Transcript of February 26, 1973 at 24.

2. Abshire v. Chicago and Eastern Illinois Railroad Co., 352 F.Supp. 601 (N.D.Ill.1972) does not support a contrary view, in that the court there apparently *assumed* that relief from alleged sex discrimination was available under Illinois law at the time the charges were filed with the EEOC, without realizing that such was not the case. Only on a careful reading of the facts in that case does it come to light that the charges there were filed with the EEOC on August 11, 1971, while the statute authorizing the Illinois FEPC to grant relief for sex discrimination did not become effective until August 27, 1971. As the court did not address the timing issue in *Abshire*, that case does not shed any light on the case before this Court.

to deal with alleged employment discrimination problems arising in that state before the EEOC gets involved in the case. E.E.O.C. v. Union Bank, 408 F.2d 867 (9th Cir. 1969). However, my research has netted no authority which supports the view that an employment discrimination charge of which the EEOC acquired competent jurisdiction at the time the charge was filed, must be referred to a state agency which *subsequently* acquires authority to deal with such charges. In the Court's view, it would be counterproductive for the EEOC to come to grips with a discrimination charge for a substantial period of time, only to be required midstream to refer the matter to a state agency which comes into being subsequent to the filing of the charge.

The opinion in Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) does not support a contrary view. In that case the complainant filed a charge with the EEOC in Colorado without first complaining to the Colorado Civil Rights Commission. As that agency was empowered to take action on discrimination charges at the time the charge was brought to the EEOC, the EEOC held the charge in abeyance and referred the matter to the Colorado Commission for action before taking jurisdiction. The Supreme Court held that the procedure followed in that case was proper, noting that "[N]othing in the Act suggests that the state proceedings may not be initiated by the EEOC *acting on behalf of the complainant* rather than by the complainant himself." (Emphasis added) In effect the Court in *Love* found that where a complainant files a charge with the EEOC before first filing with an existing state agency

as required under 42 U.S.C.A. § 2000e–5(c), the EEOC may file with the state agency on behalf of the complainant. Thus the complainant himself must be under a statutory obligation to file with a state agency before the EEOC may file on his behalf. As I have already determined that a complainant such as the plaintiff here, is under no statutory duty to file a charge with a state agency which comes into existence *after* the charge has been filed with the EEOC, Donohue v. Shoe Corporation of America, *supra*, the opinion in Love v. Pullman, *supra*, cannot be read to require the EEOC to so file on behalf of the complainant before it can assume jurisdiction over the case. Accordingly, I find that the fact that neither the plaintiff nor the EEOC filed charges with the FEPC does not deprive the Court of jurisdiction in this matter.

■ Our inquiry into the jurisdictional bases of this action does not end here. There is no question that a valid right to sue notice issued pursuant to 42 U.S.C.A. § 2000e–5(f)(1) [3] is also a prerequisite to a federal district court acquiring jurisdiction in a Title VII action. Stebbins v. Continental Insurance Co., 143 U.S.App.D.C. 121, 442 F.2d 843 (1971). Neither party disputes that a notice was issued in the instant case by an EEOC district director. The problem, as defendants view it, is that the notice here was invalidly issued, thereby depriving this Court of jurisdiction. They argue that the commission is without authority to delegate to district directors the issuance of right to sue notices, and that, in any event, no valid delegation of that responsibility has been made by the commission. Those precise arguments were considered and

3. 42 U.S.C.A. § 2000e–5(f)(1) provides in pertinent part: "If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charges or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . ."

rejected by the Federal District Court for the Northern District of California in Stone v. E. D. S. Federal Corp., 351 F.Supp. 340 (N.D.Cal.1972). In that sex discrimination case, Judge Schnacke found that the issuance of a right to sue notice was "no more than a formality" not involving the exercise of discretion and personal judgment, and that "[i]t would be foolish to hold that [the commission] cannot delegate these clerical tasks to subordinates." He also found that the commission had in fact delegated the authority to issue right to sue notices in a directive contained in an official EEOC manual.

■■■ On examining the pertinent statute, 42 U.S.C.A. § 2000e–5(f)(1),[4] I am in agreement with Judge Schnacke that the issuance of a right to sue letter is indeed a ministerial act, see Cox v. United States Gypsum Co., 409 F.2d 289, 291 (7th Cir. 1969), which can be delegated to subordinates. Krug v. Lincoln National Life Insurance Co., 245 F.2d 848, 853 (5th Cir. 1957); Shreveport Engraving Co. v. United States, 143 F.2d 222, 227, (5th Cir. 1944) cert. denied, 323 U.S. 749, 65 S.Ct. 82, 89 L.Ed. 600; see Greene v. McElroy, 360 U.S. 474, 506, 79 S.Ct. 1400, 3 L.Ed.2d 1377, 1396 (1959); N.L.R.B. v. John S. Barnes Corp., 178 F.2d 156, 159 (7th Cir. 1949). Section 2000e–5(f)(1) provides in substance that upon the passage of one hundred and eighty days from the filing of charges with the EEOC or the expiration of any period, of reference to the state, whichever is later, "the Commission . . . *shall* so notify the person aggrieved." (Emphasis added) The

EEOC has implemented that congressional mandate by directing that after the expiration of the statutory waiting period (in this case 180 days), a right to sue notice shall be promptly issued upon the demand of a charging party. 29 C.F.R. § 1601.25a (1972).[5] Thus the EEOC is left with no discretion or judgment with respect to right to sue notices. Taking judicial notice of the fact that the EEOC has been innundated with cases since its inception, I find it appropriate to quote from Krug v. Lincoln National Life Insurance Co., *supra,* where the court stated at 245 F.2d page 853 that "the delegation of duties of a public office, the duties of which are so manifold and voluminous that they could not be actually and personally performed by the person holding the office and charged with the performance of its duties" is appropriate where the duties are merely ministerial.

Having found that the EEOC has the authority to delegate the issuance of right to sue notices, the Court must next determine whether a valid delegation has in fact been made. The court in *Stone, supra,* based its finding that a valid delegation had been made on an EEOC directive which provided that "Issuance of notices of right-to-sue . . . is hereby delegated to the field offices."[6] While it is clear that the commission intended by that directive to delegate its authority with respect to right to sue notices, I am concerned that the directive is contained in an EEOC manual which is conspicuously labeled "ADMINISTRATIVELY RESTRICTED".[7] To understand my concern it is

4. *Id.*

5. 29 C.F.R. § 1601.25a (1972) provides in pertinent part: "At any time after the expiration of sixty (60) days [now 180 days] from the date of the filing of a charge, or upon dismissal of the charges at any stage of the proceedings, or upon the expiration of the time for filing objections to dismissal by the Field Director pursuant to § 1601.19, the charging party may demand in writing that a notice issue pursuant to § 1601.25, and the Commission shall promptly issue such notice, with copies to all parties."

6. The directive provides as follows: "Issuance of notices of right-to-sue heretofore handled by headquarters, i. e., concurrent notice with notification of decision in no cause cases, and demands for notification under 1601.25(b), is hereby delegated to the field offices." Section 678 EEOC Manual 1 (Oct. 15, 1969).

7. The pertinent directive is attached to the reply memorandum of defendant Connecticut General Life Insurance Company which was filed on March 26, 1973.

necessary to delve into the commission's authority to promulgate rules and regulations.

Congress expressly authorized the commission to make rules when it provided in 42 U.S.C.A. § 2000e–12(a) that "the Commission shall have authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter." However, that authorization was not without limitations, for § 2000e–12 (a) goes on to require that "Regulations issued under this section *shall be in conformity with the standards and limitations of the Administrative Procedure Act* [APA]." (Emphasis added) While the APA is a complex piece of legislation, the Court finds it necessary to consider only that portion known as the Freedom of Information Act, 5 U.S.C.A. § 552 (hereinafter the Information Act). That section provides as follows:

"(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

. . . . . .

(B) statements of the general *course and method by which its func-* tions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, . . .

. . . . . .

(E) each amendment, revision, or repeal of the foregoing. Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. . . .

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

. . . . . .

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and

(C) *administrative staff manuals and instructions to staff that affect members of the public;*

unless the materials are promptly published and copies offered for sale." (Emphasis added)

From the record before this Court, it is unclear whether or not the EEOC complied with the Information Act in issuing its delegation directive. No showing has been made by the plaintiff either that the delegation directive is not subject to public disclosure under the Information Act, or that the directive has in fact been made available to the public in accordance with the requirements of the Act. It is quite possible that Judge Schnacke had before him a well developed record on this point, which enabled him to reach his decision in *Stone* that the delegation was proper. However, there is no indication in that opinion that the court was confronted with the question of the applicability of the Freedom of Information Act to the delegation directive. On the surface, it would seem that the EEOC directive in question is contained in an "administrative staff manual" and constitutes an "instruction to staff that affect a member of the public" which should be made available to the public. 5 U.S.C.A. § 552(a)(2)(C). Furthermore, it is not inconceivable that other sections of the Information Act—quoted earlier—might also require public disclosure of the directive. Assuming, arguendo, that public disclosure of the delegation directive *is* required under the Information Act, the fact that the directive is contained in a manual labeled "ADMINISTRATIVELY RESTRICTED" leads this Court to suspect that the directive is *not* in fact open to public inspection. If the directive does not comply with the requirements of the Freedom of Information Act—which is part of the APA—it obviously does not conform to the stand-

ards and limitations of the APA as mandated by Congress in 42 U.S.C.A. § 2000e–12(a),[8] and it is consequently invalid.

■ The burden of proof in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction; in this case the plaintiff. Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951, 955 (1942); Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320, 1324 (3rd Cir. 1972). In order to establish that this Court has acquired jurisdiction, plaintiff must show, among other things, that a valid right to sue notice has been issued. Stebbins v. Continental Insurance Co., 143 U.S.App.D.C. 121, 442 F.2d 843 (1971). Plaintiff has failed to carry that burden in that she has not shown that the delegation directive in question was validly issued. Accordingly, this action must be dismissed for lack of subject matter jurisdiction.

While I find it unnecessary to decide defendants' other motions in light of my decision to dismiss on jurisdictional grounds, I nonetheless feel constrained to point out that a recently decided Supreme Court case, cited by none of the parties, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), casts considerable doubt on the viability of plaintiff's claim as presently set forth in her complaint. In that case, involving alleged racially discriminatory employment practices, Justice Powell enunciated the elements of a prima facie case in a Title VII action as follows: "The complainant in a Title VII trial must carry the initial burden under the statute [Civil Rights Act of 1964] of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that *he applied* and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 93 S.Ct. at 1824, 36 L.Ed.2d at 677 (emphasis added). In the case at bar, plaintiff has *not* alleged in her complaint (1) that she ever applied or asked to be interviewed at the college placement office by the defendants, (2) that she ever applied for employment with the defendants, or (3) that any of the defendants has refused to hire her because of her sex or for any other reason. She alleges only that she sought to use the services of the Sacramento State College Graduate Placement Center and was "deterred from making application for employment and seeking an interview" with representatives of the defendants. Without deciding, it appears that plaintiff has not established a prima facie case, in that she has failed to allege that she actually applied for either an interview or a job with any of the defendants. In the event plaintiff is able to overcome the jurisdictional defects in this case and decides to file a new action, the standards enunciated in McDonnell Douglas Corp. v. Green should be given careful consideration.

It is ordered that this action be, and the same is hereby, dismissed for lack of subject matter jurisdiction.

## ON MOTION TO RECONSIDER

■ On January 21, 1974, this court issued a memorandum in this case and ordered the action dismissed for lack of subject matter jurisdiction. Plaintiff timely requested a rehearing of the memorandum and order pursuant to Federal Rules of Civil Procedure 59, the motion for a new trial. The equivalent of a rehearing under the federal rules is a motion for a new trial. Heikkila v. Barber, 164 F.Supp. 587 (Cal.1958). A district court has inherent powers to re-

8. 42 U.S.C.A. § 2000e–12(a) provides: "The Commission shall have authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter. Regulations issued under this section shall be in conformity with the standards and limitations of the Administrative Procedure Act."

consider its decisions. Lemelson v. Ampex Corporation, 372 F.Supp. 708 (Ill. 1974); Wetzel v. Liberty Mutual Insurance Co., 372 F.Supp. 1146 (Pa.1974).

Originally, this case was brought as a class action claiming unlawful sex discrimination in the employment practices of 32 corporate defendants, and several "Does", alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and seeking injunctive relief, compensatory damages, costs and attorney's fees. As an initial matter, it should be noted that there is no provision in the federal statutes or federal rules for the use of fictitious parties. The Ninth Circuit has consistently rejected the inclusion. of "Does" in the complaint and we do the same here. Fifty Associates v. Prudential Insurance Co., 446 F.2d 1187 (9th Cir. 1970); Craig v. United States, 413 F.2d 854 (9th Cir. 1969); Molnar v. National Broadcasting Company, 231 F.2d 684 (9th Cir. 1956).

A brief reiteration of the salient facts in this case will be helpful. The Sacramento State College [now State University] Graduate Placement Center sent employer recruitment forms to firms which had shown an interest in employment interviews on the campus. These forms contained boxes which could be checked if a firm preferred to interview men or women graduates. Each of the defendants purportedly checked the box which indicated a preference for male graduates. Plaintiff, a female student at Sacramento State, was scheduled to graduate in June, 1970. She and the class she represents allegedly sought to use the Sacramento State Graduate Placement Center during the Spring of 1970, but were supposedly "deterred from making application for employment and seeking an interview" with representatives of the defendants. Additionally, two defendants allegedly circulated printed recruitment brochures on campus which referred exclusively to employment opportunities for men.

Plaintiff claims that such employment practices are sexually discriminatory and are therefore violative of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

Plaintiff initially filed charges with the Equal Employment Opportunity Commission [hereafter EEOC] on May 15, 1970. The instant action was filed on August 23, 1972, pursuant to 42 U.S. C. § 2000e–5(f), after right to sue letters were issued by the EEOC to plaintiff on August 8, 1972.

A number of motions were filed in this action by various defendants. In addition, several defendants joined in virtually each and every motion on file. This court, as noted, disposed of the entire case by granting a motion to dismiss due to lack of subject matter jurisdiction, and no disposition was made as to the validity of any other motion. Because the January 21, 1974, granting of defendants' motion to dismiss has raised serious and substantial questions relating to the rights of private parties to sue under the Civil Rights Act, and because the parties have cited to this court several applicable district court decisions which were rendered subsequent to January 21, 1974, Shaffield v. Northrop Worldwide Aircraft Services, Inc., 373 F.Supp. 937 (M.D.Ala., 1974); Roney v. Amax Lead Co., Civil Cause No. 74–24 (E.D.Mo., May 14, 1974); Smith v. United Press International, No. 74 Civ. 555 (S.D.N.Y. June 17, 1974); Jones v. United Gas Improvement Corporation, 383 F.Supp. 420 (E.D.Pa.1974), this court is constrained to reconsider its grant of the motion to dismiss. In this endeavor, the court has been aided by briefs and opinions of counsel, and by a brief filed February 12, 1974, by counsel for the EEOC as *amicus curiae*.

On rehearing and reconsideration, the court must conclude, as enunciated more fully below, that the requirements of subject matter jurisdiction are met in this case and that the motion to dismiss on that ground should have been denied.

## MOTION TO DISMISS—SUBJECT MATTER JURISDICTION

Several defendants moved to dismiss for lack of subject matter jurisdiction on three separate bases: (1) that the administrative requirements of 42 U.S. C. § 2000e–5(c) had not been met in that plaintiff had not raised her claim with the California Fair Employment Practices Commission (hereafter FEPC), nor had the EEOC referred the claim to the FEPC; (2) that the August 8, 1972, right to sue letters had been invalidly issued because they had been issued by an EEOC district director rather than by the Commission itself and the Commission was without authority to make such a delegation; (3) that even if the Commission had the authority to delegate, the delegation in this case was invalid.

In the memorandum and order of January 21, 1974, this court rejected defendants' first basis in support of their motion to dismiss, and the court reaffirms that conclusion. Title 42 U.S.C. § 2000e–5(c) requires an aggrieved party, before filing a charge with the EEOC, to complain first to whatever state or local agency is authorized "to grant or seek relief from such [unlawful employment] practice or to institute criminal proceedings with respect thereto." Unless that requirement has been complied with, neither the EEOC nor this court has jurisdiction to entertain the charge. Crosslin v. Mountain States Telephone and Telegraph Co., 422 F.2d 1028 (9th Cir. 1970). The California FEPC has authority to investigate and remedy discriminatory employment practices in California. However, on May 15, 1970, when plaintiff filed her charge with the EEOC, the FEPC did not have authority to investigate and remedy acts of discrimination based upon sex. It was not until November, 1970, that sex discrimination became an unfair employment practice under § 1419(f) of the California Labor Code. Calif.Stats.1970, c. 1508, p. 2994 #3. Therefore, the Civil Rights Act of 1964 did not require plaintiff to complain to the FEPC before turning to the EEOC. Donohue v. Shoe Corporation of America, 337 F. Supp. 1357 (Cal.1972).

Neither was it incumbent upon the EEOC itself to refer the case to the FEPC once the latter agency acquired authority over sex discrimination cases in November, 1970. The court recognizes that Congress, in enacting the Civil Rights Act of 1964, intended to give each state which establishes the proper administrative machinery a reasonable opportunity to deal with alleged employment discrimination questions arising in that state before federal involvement through the EEOC. Equal Employment Opportunity Commission v. Union Bank, 408 F.2d 867 (9th Cir. 1969). However, research has netted no authority which supports the view that the employment discrimination charge of which the EEOC acquired competent jurisdiction at the time the charge was filed, must be referred to a state agency which *subsequently* acquires authority to deal with such charges. Indeed, in the court's view, it would be counterproductive for the EEOC to come to grips with a discrimination charge for a substantial period of time, only to be required midstream to refer the matter to a state agency which acquires authority or comes into being subsequent to the filing of the charge.

Secondly, this court, in the January 21, 1974, memorandum and order, rejected defendants' second contention that the EEOC did not have the authority to delegate to district directors the power to issue right-to-sue letters. This court here reaffirms that conclusion. Title 42 U.S.C. § 2000e–5(f)(1) provides that the EEOC will issue a right-to-sue letter to any claimant upon the expiration of 180 days, if the EEOC has not filed charges or reached a conciliation agreement within that time. This court is in agreement with Judge Schnacke who held in Stone v. E. D. S. Federal Corporation, 351 F.Supp. 340 (Cal.1972), that the issuance of a right to sue notice was "no more than a formality" not involving the exercise of discretion and personal judgment, and that "[i]t would be

foolish to hold that [the Commission] cannot delegate these clerical tasks to subordinates." As noted in Krug v. Lincoln National Life Insurance Co., 245 F.2d 848, 853 (5th Cir. 1957): "the delegation of duties of a public office, the duties of which are so manifold and voluminous that they could· not be actually and personally performed by the person holding the office and charged with the performance of its duties" is appropriate where the duties are merely ministerial.

In the January 21, 1974, memorandum and order, this court found defendants' third basis in support of their motion to dismiss to be meritorious. The decision that the delegation to issue right to sue letters was an improper one was based on a violation by the EEOC of a portion of the Administrative Procedure Act, specifically the Freedom of Information Act, 5 U.S.C. § 552 [hereafter the FIA]. The FIA requires that each agency shall make available to the public various types of information, including: "administrative staff manuals and instructions to staff that affect members of the public." 5 U.S.C. § 552(a)(2)(C). This court found that the EEOC failed to comply with this mandate of the FIA since the directive to delegate was contained in an EEOC manual which was labeled "ADMINISTRATIVELY RESTRICTED." Section 678 EEOC Manual 1 (October 15, 1969).

In fact, there is no real dispute that the EEOC failed to comply with the provisions of FIA when it published the administratively restricted manual on October 15, 1969. The EEOC subsequently removed the "administratively restricted" designation from its manual on May 21, 1973, and delegated again the power to issue right to sue letters on August 15, 1973.

This court determined on January 21, 1974, that plaintiff had the burden of proof to show that the court had acquired jurisdiction and that the valid issuance of a right to sue letter was a segment of the jurisdictional issue.· Because plaintiff failed to carry that bur-

den in that she failed to show that the delegation directive had been validly issued, the court ·concluded that subject matter jurisdiction was lacking and that the action must be dismissed.

Upon reconsideration,· however, this court must conclude that to dismiss plaintiff's action here due to the error of the EEOC would be to penalize private party plaintiffs for the mistakes of an administrative governmental agency. While the EEOC was in error for not complying with the FIA, the plaintiff has followed all the appropriate administrative channels in accordance with 42 U.S.C. § 2000e et seq. To penalize plaintiff for the mistake of the EEOC would be a hollow triumph of form over substance. Procedural niceties should not be utilized to impede a claimant in quest of a hearing on the merits of a case. Burns v. Thiokol Chemical Corporation, 483 F.2d 300, 305 (5th Cir. 1973).

Additionally, to dismiss plaintiff's claim for her failure to spot a technical defect would serve neither the purposes of the Civil Rights Act of 1964, nor the Freedom of Information Act. Six years ago in another employment discrimination case, this court noted the salutary qualities of the Civil Rights Act of 1964 and the necessity for a liberal procedural approach so that plaintiffs need not be required to ·"dot every 'i' and cross every 't' on their way to the courthouse." Antonopulos v. Aerojet-General Corporation, 295 F. Supp. 1390 (Cal.1968). In the instant case, plaintiff in fact has followed all the correct procedural steps and her only failure has been not to recognize that the EEOC failed to properly delegate the power to issue right to sue letters due to non-adherence with the FIA. As noted earlier, the issuance of a right to sue letter is a mere formality. Stone v. E. D. S. Federal Corporation, 351 F.Supp. 340, 343 (Cal.1972). The action or inaction of the EEOC cannot affect a plaintiff's substantive rights under the Civil Rights Act of 1964. Beverly v. Lone Star Lead Construction Corporation, 437

F.2d 1136, 1142 (5th Cir. 1971). As for the purpose of the Freedom of Information Act, it was passed into law to protect the public from unwarranted governmental secrecy. Getman v. National Labor Relations Board, 146 U.S.App.D. C. 209, 450 F.2d 670 (1971). It would be a perversion of the FIA for it to be used now to punish a member of the public for the secrecy of a governmental agency.

Certainly the burden of proof in a Rule 12(b) motion to dismiss for lack of subject matter jurisdiction is on the plaintiff, the party asserting jurisdiction. Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 S.Ct. 951 (1942). Further, it is established that in 42 U. S.C. § 2000e actions, in order to show that the court has acquired jurisdiction, plaintiff must show, *inter alia,* that a right to sue letter has been issued. Stebbins v. Continental Insurance Companies, 143 U.S.App. D.C. 121, 442 F.2d 843 (1971). To go beyond this point, however, and require this plaintiff to prove that the right to sue letters she received had been *validly* issued by the EEOC (e. g. that the delegation to issue the letters had been validly made pursuant to the FIA) would impose too onerous a burden. After an aggrieved person such as plaintiff in this case has filed a charge and obtained her right to sue letter from the EEOC, she has done all that is expected of her prior to bringing suit. She has carried every burden which Title VII requires her to carry prior to suing in the district court. Shaffield v. Northrop Worldwide Aircraft Services, Inc., 373 F.Supp. 937 (M.D.Ala.1974).

Upon thorough reconsideration, therefore, this court must conclude that subject matter jurisdiction is proper in this case and the motion to dismiss for lack of subject matter jurisdiction must be denied. This conclusion does not dispose of the matter for various defendants have made numerous other motions which, because of the prior disposition, were not treated in the January 21, 1974, memorandum and order. Since the inception of this action, this court has ordered the dismissal of 10 of the named defendants due to voluntary compliance and settlement: Prudential Insurance; Boise Cascade; Western Electric; The Travelers; Connecticut General; Reliance Insurance; Chubb & Son; Jewel Home Shopping; John Hancock; and General Adjustment. Of the remaining 22 defendants, 11 have chosen to make pre-trial motions in lieu of answer. This court has previously considered the motions challenging its subject matter jurisdiction. Now it will consider the remaining motions made by various defendants.

### CONSIDERATION OF OTHER MOTIONS

(1) Motion to dismiss—failure to state a claim.

Defendants General Mills, Union Oil, St. Paul Fire and Marine, Phillips Petroleum, Minnesota Life and Liberty Mutual have all moved to dismiss for failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6). The essence of this motion is that plaintiff has failed to allege in her complaint that she actually applied for employment with defendants and was rejected.

In fact, the complaint in this action only alleges that plaintiff "sought to use the services of the Sacramento State College Placement Center" and that she and the class she represents "were deterred from making application for employment and seeking an interview" with defendants, because of their allegedly discriminatory practices.

Although not cited, defendants apparently rely on the recent Supreme Court case of McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In that case, the Supreme Court stated:

> "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie* case of racial discrimination. This may be done by showing (i) that he

belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 93 S.Ct. at 1824.

The Supreme Court, however, was careful to point out in a footnote to the above-cited passage, that the facts and incidents of the *prima facie* case may vary:

"The facts necessarily will vary in Title VII cases, and the specification above [referring to the burden of proof specification enumerated above] of the *prima facie* proof required from the complainant in this case is not necessarily applicable in every respect to differing factual situations." 93 S.Ct. at 1824.

The Supreme Court seemed to be saying that the typical employment discrimination case would encompass the situation where the plaintiff actually applied for and was rejected for a job, due to unlawful discrimination. However, the specifications of employment discrimination cases can and do vary as illustrated by Hailes v. United Air Lines, 464 F.2d 1006, 1009 (5th Cir. 1972). In that case, the plaintiff, a male, charged sex discrimination in the hiring of stewardesses and flight attendants. Plaintiff had not even applied for a job but the court held that a complaint of sex discrimination need not allege that plaintiff actually applied for and was rejected for a job, but that it is sufficient to allege that the practices of the defendant employer were so discriminatory as to inculcate a reasonable belief on plaintiff's part that even applying for the job was futile.

 Similarly, in the instant case, it is sufficient for plaintiff to allege in her complaint that she was deterred from making application and seeking an interview with defendants because of their employment practices. Where the defendants had indicated an express preference to interview and hire "males" it can reasonably be assumed that plaintiff would believe application for the jobs would be a futile gesture. On this basis, it is concluded that the complaint adequately states a claim sufficient to withstand a challenge under F.R.C.P. 12(b)(6).

(2) Motion to dismiss—failure to join an indispensable party.

Defendants Ralston-Purina and St. Paul Fire and Marine move to dismiss pursuant to F.R.C.P. 12(b)(7) in that indispensable parties—Sacramento State and the "Does"—have not been joined in accordance with F.R.C.P. 19(a). Defendants Phillips Petroleum and Liberty Mutual make the same motion, but only with regard to Sacramento State. Since this court has already disposed of the question of "Does", the motions to dismiss all relate to failure to join Sacramento State as a party.

F.R.C.P. 12(b)(7) permits a motion to dismiss when there is absent a party without whom complete relief cannot be granted or whose interest in the dispute is such that to proceed in his absence might prejudice him or the parties already before the court. 5 Wright & Miller, Federal Practice and Procedure, § 1359, p. 628. F.R.C.P. 19(a) reads as follows:

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other-

wise inconsistent obligations by reason of his claimed interest. . . ." Since Sacramento State claims no interest relating to the subject of this action, the question becomes whether complete relief can be accorded in the absence of Sacramento State as a party.

Compulsory joinder is an exception to the general practice of giving plaintiff the right to decide who shall be parties to a lawsuit. Ford Motor Credit Co. v. Beard, 45 F.R.D. 523 (S.C.1968). Although courts must take cognizance of the traditional prerogative given to plaintiffs, the prerogative will have to be compromised when significant countervailing considerations make the joinder of a party desirable, within the court's discretion under F.R.C.P. 19. 7 Wright & Miller, Federal Practice and Procedure, § 1602 p. 17. The Supreme Court noted four interests which are relevant to questions of joinder under F.R. C.P. 19 in the case of Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968):

> "First, the plaintiff has an interest in having a forum. . . . Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another . . . Third, there is the interest of the outsider whom it would have been desirable to join. . . . Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." 39 U.S. at 109–111, 88 S.Ct. at 739.

■ Applying the principles of *Provident Tradesmens,* it becomes apparent that Sacramento State is a party which should be joined pursuant to F.R. C.P. 19(a). Joinder of Sacramento State would in no way deprive plaintiff of a forum or deprive this court of subject matter jurisdiction over the action. Defendants may properly wish to join Sacramento State as a party defendant to avoid inconsistent relief or sole responsibility; 42 U.S.C. § 2000e–2 prescribes not only unlawful employment practices by employers, but also by employment agencies. The Sacramento State Graduate Placement Center was the agency of Sacramento State which allegedly set up the employment interviews with defendants and prepared the forms with "male/female" preferences. It is certainly within the interest of Sacramento State, as a public institution, and within the interest of the public in general, to join Sacramento State as a party so that complete, consistent, and efficient settlement of the controversy can be achieved. As noted in the case of Haas v. Jefferson National Bank, 442 F.2d 394 (5th Cir. 1971), a party is considered indispensable when it is more than a key witness, but is an active participant in the alleged cause of action.

Since it is feasible to join Sacramento State as a party, the court may do so pursuant to F.R.C.P. 19(a), and need not consider dismissal of the action due to failure to join an indispensable party. 5 Wright & Miller, Federal Practice and Procedure, § 1359, p. 628.

(3) Motion to dismiss—failure to state a claim on which relief can be granted in a class action.

■ St. Paul Fire and Marine moves to dismiss for failure to state a claim on which relief can be granted in a class action. F.R.C.P. 23 enumerates the requirements which must be met before a suit may be pursued as a class action. Compliance with F.R.C.P. 23, however, is not properly tested by a motion to dismiss for failure to state a claim. Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969). Instead, the district court, pursuant to F. R.C.P. 23(c)(1) "as soon as practicable after the commencement of an action brought as a class action . . . shall determine by order whether it is to be so maintained."

■ Although either plaintiff or defendants may move for a determination of appropriateness of a class action pursuant to F.R.C.P. 23(c)(1), Cook County

Teachers Union v. Byrd, 456 F.2d 882 (7th Cir. 1972), cert. denied, 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90, the court has an independent obligation to decide the issue and need not wait for the parties to so move. Frankel, "Some Preliminary Observations Concerning Civil Rule 23", 43 F.R.D. 39 (1967); Stebbins v. Nationwide Mutual Insurance Co., 469 F.2d 268 (4th Cir. 1972), cert. denied, 410 U.S. 939, 93 S.Ct. 1403, 35 L.Ed.2d 606.

F.R.C.P. 23(a) creates four prerequisites to the maintenance of a class action:

> "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In addition to satisfying all the elements set out in Rule 23(a), the case must fall within one of the three categories of class actions described in Rule 23(b):

> "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications . . ., or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive . . .; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a

class action is superior to other available methods [of] adjudication . . ."

■ It is, however, inappropriate for the court to make a Rule 23(c)(1) determination at this time because the parties simply have not adequately enumerated the applicability or inapplicability of the prerequisites set out in Rule 23(a) and (b). Plaintiff has the burden of proof of showing that the provisions of Rule 23(a) and (b) are satisfied. Bel Air Markets v. Foremost Dairies, Inc., 55 F.R.D. 538 (Cal.1972). Therefore, the parties are directed, as set out in the order hereafter, to cite to this court points and authorities on the appropriateness of a class action suit in this case, preparatory to a Rule 23 (c)(1) ruling by this court. The parties are directed to pay special attention to the following issues and questions:

(a) Whether the class is so numerous that joinder of all members would be impracticable. Although plaintiff need not show the *exact* number of potential members of the class, she does bear the burden of showing impracticability. Cash v. Swifton Land Corp., 434 F.2d 569, 571 (6th Cir. 1970).

(b) Whether there exist common questions of law or fact to the class. This court is not unmindful of authority which supports the proposition that a class action is typically appropriate to redress a grievance grounded in civil rights. Attention should be directed, however, to the *identification* of the aggrieved class (i. e. who are the members of the class?).

(c) Whether plaintiff's claims are typical of the claims of the class. Attention should be directed to the question whether the claims of the class members must meet the jurisdictional requirements of 42 U.S.C. § 2000e et seq. To this end, the following opinions should be discussed: Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); Bowe v. Colgate Palmolive Co., 416 F.2d 711 (7th Cir. 1969); Hecht v. Cooperative for American Relief, 351 F.Supp. 305 (N.Y.1972), and Mather v. Western Air Lines, 59 F.R.D. 535 (Cal.1973).

(d) Whether plaintiff will fairly and adequately represent the class' interest. Case law should be cited on how this representation is affected, if at all, by the ten settlements which have been reached in this case.

(e) Which one of the three grounds stated in Rule 23(b) would be appropriate/inappropriate to support a class action in this case?

(f) Presuming a class action is appropriate, how would notice be most appropriately given to members of the class, and how should costs of notice be borne?

(4) Motion to strike.

 Defendants Phillips Petroleum, Liberty Mutual, Libby-McNeill, St. Paul Fire and Marine, New York Life Insurance, Grove Valve and Regulator, and Chicago Bridge and Iron, have moved to strike paragraphs 13(b), 13(c), and 13(d) from the complaint as irrelevant, immaterial, and impertinent, pursuant to F.R.C.P. 12(f).

Paragraph 13 of the complaint alleges that the named defendants have discriminated against plaintiff and the class she represents by engaging in the following practices:

"(b) Failing to adequately inform women applying for positions through the services of the Graduate Placement Center during the Spring Semester 1970 of employment opportunities or openings in traditionally male positions.

(c) Failing to hire women for traditionally male positions.

(d) Failing to adopt an affirmative recruitment program which would overcome the continued effect of discrimination practiced by defendants, and each of them, against women in recruitment, interviewing, and hiring."

The language of Title 42 U.S.C. § 2000e–5(g) is clear in delineating the power of courts to effectively remedy and terminate discriminatory employment practices:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate."

The Ninth Circuit has held that a court may enjoin and may award damages, and can afford "affirmative relief" where appropriate under 42 U.S.C. § 2000e et seq. Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002, 1006 (9th Cir. 1972). The district courts, therefore, have broad equitable powers to remedy unlawful employment practices under § 2000e.

Furthermore, because the motion to strike under F.R.C.P. 12(f) is such a drastic device, courts view it with disfavor and grant the motion infrequently. Harrington & Co. v. International Longshoremen's Association, 356 F.Supp. 1079 (Fla.1973); Teacher's Insurance v. Northridge Corp., 55 F.R.D. 1 (Wis. 1972); Rosenblatt v. United Air Lines, 21 F.R.D. 110 (N.Y.1957). Defendants have not shown that the above-cited allegations are so devoid of relevancy, materiality, or pertinence so as not to raise any possible cause of action under 42 U.S.C. § 2000e et seq. In any case, the appropriateness of plaintiff's allegations and contentions in paragraph 13(b), (c), and (d) are better left for adjudication on the merits, than disposition on a motion to strike. 5 Wright & Miller, Federal Practice and Procedure § 1382, pp. 815–816.

(5) Motion to dismiss—no charging allegations.

Defendants Grove Valve and Regulator, Minnesota National Life, and Chicago Bridge and Iron, all move to dismiss due to failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6). The gravamen of this motion is that although plaintiff has included these three defendants in the caption to the complaint, there are

no charging allegations in the body of the complaint.

Indeed, other than the caption, none of these defendants are identified in the complaint. While the complaint specifically sets out the state of incorporation, place of business, and date of interview at Sacramento State for each of the other 29 defendant corporations, the complaint fails to set out this information as to the three defendants-movants.

■ As succinctly stated by F.R.C. P. 8(a), the pleading need only set out (1) a short and plain statement of the grounds for jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment and relief. Technical forms of pleading are not required under the federal rules, and the only real function of the federal pleadings is to give notice to the other party of the claim or defense. Owens Generator Co. v. H. J. Heinz Co., 23 F.R.D. 121 (Cal.1958). It would appear to this court that even without the specific charging allegations, the three defendants-movants herein would be placed on adequate notice of the claim asserted against them. The only information which the complaint lacks as to these three defendants-movants is their place of incorporation, their place of business, and the date of interviews at Sacramento State during the Spring of 1970. All this information should be within the knowledge of defendants-movants.

■ Nevertheless, the complaint as to these three defendants-movants is technically defective within the requirements of F.R.C.P. 8(a) and such defect may be challenged by a motion to dismiss under F.R.C.P. 12(b)(6). Such a motion to dismiss is generally not on the merits, however, and the courts will typically give plaintiff leave to file an amended complaint. Sidebotham v. Robison, 216 F.2d 816 (9th Cir. 1954); Hughes v. Johnson, 305 F.2d 67 (9th Cir. 1962). This generous procedure is in accord with the federal policy of deciding cases on the basis of the substantive rights involved rather than on tech-

nicalities and that plaintiffs should be given every opportunity to cure a formal defect in pleading. Bonanno v. Thomas, 309 F.2d 320 (9th Cir. 1962).

## ORDER

It is therefore ordered, that:

(1) On rehearing and reconsideration, defendants' motion to dismiss for lack of subject matter jurisdiction is denied, and statements contained within this court's January 21, 1974, memorandum and order inconsistent with this memorandum and order are hereby vacated;

(2) Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is denied;

(3) Defendants' motion to dismiss for failure to join Sacramento State as an indispensable party is denied; the court, however, orders Sacramento State joined as a party pursuant to F.R.C.P. 19(a), and plaintiff is given 30 days from the date of this memorandum and order to file an amended complaint joining Sacramento State as a party defendant;

(4) Defendants' motion to dismiss for failure to state a claim upon which relief may be granted in a class action is denied; in order that this court may make an appropriate determination in accordance with F.R.C.P. 23(c)(1), however, plaintiff is directed to file points and authorities addressing the question of class action as outlined in this memorandum within 30 days from the date of this order, any and all defendants may respond within 15 days following the filing of plaintiff's brief; plaintiff shall have 15 days thereafter to close;

(5) Defendants' motion to strike is denied;

(6) Defendants' motion to dismiss due to lack of charging allegations is granted: the cause is dismissed as to defendants Grove Valve and Regulator, Minnesota National Life, and Chicago Bridge and Iron, without prejudice to plaintiff to file an amended complaint within 30 days from the date of this order, not inconsistent with the memorandum herein.